1  Harrison J. Frahn IV (Bar No. 206822)
   hfrahn@stblaw.com
2  SIMPSON THACHER & BARTLETT LLP
   2475 Hanover Street
3  Palo Alto, California  94304
   Telephone: (650) 251-5000
4  Facsimile: (650) 251-5002

5  *Attorneys for Defendant Light In The Box Limited*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| E & E CO., LTD., a California corporation,<br><br>    Plaintiff,<br><br>vs.<br><br>LIGHT IN THE BOX LIMITED, a Hong Kong corporation,<br><br>    Defendant. | Case No. 3:15-CV-00069-EMC<br><br>**MOTION TO COMPEL ARBITRATION**<br><br>Date:   September 24, 2015<br>Time:   1:30 p.m.<br>Place:  Courtroom 5<br>Judge:  Hon. Edward M. Chen |

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................................1

II.  FACTUAL BACKGROUND ..............................................................................................2

III. ARGUMENT .......................................................................................................................4

   A.   E&E Entered A Valid And Enforceable Agreement To Arbitrate ................................6

   B.   The HKIAC Must Determine Whether E&E's Claims Are Subject To Arbitration ......7

   C.   Alternatively, The Arbitration Agreement Encompasses E&E's Claims ....................10

IV.  CONCLUSION ..................................................................................................................13

# TABLE OF AUTHORITIES

**Cases**

*Am. Express Co. v. Italian Colors Est.*, 133 S. Ct. 2304 (2013) ..........................................................5

*AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011)..............................................................5

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643 (1986).........................................10

*Athena Feminine Techs. Inc. v. Wilkes*, No. C 10-04868, 2011 WL 4079927
    (N.D. Cal. Sept. 13, 2011)..................................................................................................11, 12

*Bauhinia Corp. v. China Nat'l Mach. & Equip. Imp. & Exp. Corp.*, 819
    F.2d 247 (9th Cir. 1987)............................................................................................................5

*Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972) ........................................................................5

*Brennan v. Opus Bank*, No. 13-35580, 2015 WL 4731378 (9th Cir. Aug. 11,
    2015)......................................................................................................................................7, 9

*Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796 (N.D. Cal. 2004) ............................................ 5-6

*First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938 (1995) ...............................................................8

*Genesco, Inc. v. Kakiuchi & Co.*, 815 F.2d 840 (2d Cir. 1987) ........................................................11

*Homestake Lead Co. of Mo. v. Doe Run Res. Corp.*, 282 F. Supp. 2d 1131
    (N.D. Cal. 2003)......................................................................................................................10

*Hopkins & Carley, ALC v. Thompson Elite*, 10-cv-05806, 2011 WL
    1327359 (N.D. Cal. Apr. 6, 2011)...........................................................................................10

*Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002) ............................................................8

*KPMG LLP v. Cocchi*, 132 S. Ct. 23 (2011) ................................................................................. 4-5

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614
    (1985) ............................................................................................................................. 4-5, 10

*Mortensen v. Bresnan Commc'ns, LLC*, 722 F.3d 1151 (9th Cir. 2013) ..........................................5

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983) .................................10

*Oracle Am., Inc. v. Myriad Group A.G.*, 724 F.3d 1069 (9th Cir. 2013) .....................................8, 9

*Preston v. Ferrer*, 552 U.S. 346 (2008) ...........................................................................................5

*Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469 (9th Cir. 1991) ..................................6

*Rogers v. Royal Caribbean Cruise Line*, 547 F.3d 1148 (9th Cir. 2008) ........................................5

*Savetsky v. Pre-Paid Legal Servs., Inc.*, No. 14-03514 SC, 2015 WL
    4593744 (N.D. Cal. July 30, 2015) .........................................................................................11

*Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716 (9th Cir. 1999) ........................................................10, 11

*Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904 (N.D. Cal. 2011) ...................................7

*Tigra Tech. v. Techsport Ltd.*, No. SACV 10-1623, 2011 WL 2710678
    (C.D. Cal. July 12, 2011) ...........................................................................................................5, 6

*Tompkins v. 23andMe, Inc.*, No. 5:13-cv-05682, 2014 WL 2903752 (N.D.
    Cal. June 25, 2014).....................................................................................................................6, 7

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S.
    574 (1960) ......................................................................................................................................10

**Statutes**

9 U.S.C. § 2 (2012) ................................................................................................................................5

9 U.S.C. § 206 (2012) .......................................................................................................................1, 5

**Other Authorities**

*Administered Arbitration Rules*, art. 19.1, Hong Kong International
    Arbitration Center (2013),
    http://www.hkiac.org/images/stories/arbitration/2013_hkiac_rules.pdf. ..................................8

*Commercial Arbitration Rules and Mediation Procedures*, rule 7(a),
    American Arbitration Association (2013),
    https://www.adr.org/aaa/ShowProperty?nodeId=/UCM/ADRSTG_0041
    03&revision=latestreleased ............................................................................................................9

*UNCITRAL Arbitration Rules*, art. 21, para. 1, United Nations Commisson
    on International Trade Law (1976),
    http://www.uncitral.org/pdf/english/texts/arbitration/arb-rules/arb-
    rules.pdf) .........................................................................................................................................9

*UNCITRAL Arbitration Rules*, art. 23, para. 1, United Nations Commission
    on International Trade Law (2010),
    http://www.uncitral.org/pdf/english/texts/arbitration/arb-rules-
    revised/arb-rules-revised-2010-e.pdf ............................................................................................9

**NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

Please take notice that on September 24, 2015 at 1:30 p.m., or as soon thereafter as the matter may be heard by the Court in the courtroom of the Honorable Edward M. Chen, Courtroom 5, 17th Floor, United States District Court, 450 Golden Gate Avenue, San Francisco, California, Defendant Light In The Box Limited ("LITB") will and hereby does move the Court, pursuant to the Federal Arbitration Act, 9 U.S.C. § 206, for an order staying this litigation and compelling arbitration. This motion to compel arbitration is brought on the ground that Plaintiff E&E Co. Ltd. ("E&E") and Defendant LITB agreed to arbitrate this dispute in accordance with the terms of the valid and enforceable arbitration provision on LITB's website, Lightinthebox.com.

LITB's motion is based on this Notice of Motion and Motion to Compel Arbitration, the accompanying Memorandum of Points and Authorities, the Declaration of Liu Shen in support of the Motion to Compel Arbitration, the complete files and records in this action, oral argument of counsel, and such other and further matters as this Court may consider.

## I.     INTRODUCTION

E&E's claims must be resolved through arbitration. E&E agreed to arbitrate its claims when it purchased the products at issue. On the Lightinthebox.com website, the terms of use set forth a broad arbitration provision with a forum selection clause. This provision covers the claims asserted in this action in their entirety. It states that where the parties fail to resolve a dispute within 30 days, they agree to submit it to the Hong Kong International Arbitration Center ("HKIAC") for arbitration under the HKIAC rules. Pursuant to the HKIAC rules, the parties agreed that issues of arbitrability are decided by the arbitral tribunal. This arbitration clause, which designates the HKIAC as the exclusive forum for the contracting parties' disputes and explicitly incorporates the HKIAC rules, requires that E&E's claims be referred to arbitration. LITB therefore respectfully requests that this Court stay this litigation and compel arbitration in accordance with the parties' valid and enforceable agreement.

1      Even if the Court were to rule on threshold issues of arbitrability, rather than
2 reserving these determinations for the arbitrators as the parties agreed, the case should still be
3 stayed and arbitration compelled because there is a valid agreement to arbitrate, and E&E's
4 claims fall within the scope of the agreement's broad arbitration provision.

5  **II.     FACTUAL BACKGROUND**

6      Every sale completed through LITB's website is governed by a terms of use
7 agreement.  Declaration of Liu Shen ("L. Shen Decl.") ¶¶ 4, 6.  Customers must actively assent to
8 the terms of use before they are able to proceed with completing a purchase.  *Id.* ¶¶ 6, 8.

9      When users of Lightinthebox.com attempt to purchase a product, they are
10 automatically prompted to register an account through the website.  *See id.* ¶ 4.
11 Lightinthebox.com implements the following procedure for creating a customer account: the user
12 is presented with a form requiring the user to enter an e-mail address, create a password, set a
13 default shipping destination, and click a box confirming, "I agree to LightintheBox.com['s] Terms
14 and Conditions," with "Terms and Conditions" hyperlinked to the website's terms of use.  *See id.*
15 ¶ 4; *id.* ¶ 5, Ex. A.  A customer cannot complete a purchase without successfully registering an
16 online account by providing the information above and affirmatively agreeing to the terms of use.
17 *Id.* ¶ 8.

18      By requiring that customers complete this registration process, LITB gives them
19 clear notice of its website's terms of use.  The hyperlinked "Terms and Conditions" on the
20 account creation page provide customers with easy access to review the terms to which they are
21 agreeing.  *See id.* ¶ 6; *id.* ¶ 5, Ex. A.  Upon clicking the hyperlink, a customer is immediately
22 directed to the terms of use, which state in bolded text at the top of the page: "**[a]ccessing,**
23 **browsing, or otherwise using this site indicates your agreement to all the terms and**
24 **conditions in this agreement.  Please read this agreement carefully before proceeding.**"
25 *Id.* ¶ 6; *see id.* ¶ 7, Ex. B, at 1.

26
27
28

1      Contained within the terms of use is the bolded heading, "**Arbitration**," which sets

2 out the following provision:

> Where the parties fail to settle dispute within 30 days after such dispute occurs, they agree to submit such dispute to Hong Kong International Arbitration Center (the "HKIAC") for arbitration which shall be conducted in accordance with the Commission's arbitration rules in effect at the time of applying for arbitration. The arbitral awards are final and binding upon both parties.

*Id.* ¶ 7, Ex. B, at 3.  The terms of use also outline policies and procedures for potential intellectual property infringement connected with the products offered for sale on the website.  Under the bolded heading, "**Intellectual Property Infringement Policy**," the terms of use state:

> It is the policy of LightInTheBox.com to take appropriate action where necessary to uphold and recognize all relevant State, Federal and International laws in connection with material that is claimed to be infringing any trademark, copyright, patent and all or any other Intellectual Property laws.  If you are an intellectual property rights owner and you believe that LightInTheBox.com sells, offers for sale, or makes available goods and/or services that infringe your intellectual property rights, then send the following information in its entirety to ipip@lightinthebox.com.
>
> Information required
>
> 1. An electronic or physical signature of the person authorized to act on behalf of the owner of an exclusive that is allegedly infringed;
>
> 2. A description of the allegedly infringing work or material;
>
> 3. A description of where the allegedly infringing material is located on the site (product(s) URL);
>
> 4. Information reasonably sufficient to allow us to contact you, such as your address, telephone number and e-mail address;
>
> 5. A statement by you that you have a good faith belief that the disputed use of the material is not authorized by the copyright or other proprietary right owner, its agent, or the law;
>
> 6. Identification of the intellectual property rights that you claim are infringed by the Website (e.g. "XYZ copyright", "ABC trademark, Reg. No. 123456, registered 1/1/04", etc.); and
>
> 7. A statement by you that the above information and notification is accurate, and under penalty of perjury, that you are the copyright owner or authorized to act on behalf of the owner whose exclusive right is allegedly infringed.

1  *Id.* ¶ 7, Ex. B, at 2.  These provisions are written in plain English, and are clearly and
2  conveniently presented on the website.
3          To complete the account creation process, LITB sends customers an e-mail with
4  the subject heading, "Confirm Your LightInTheBox Account."  *Id.* ¶ 9; *see id.* ¶ 10, Ex. C.  This
5  confirmation e-mail states, "Please click to confirm your email address and begin using your
6  LightInTheBox.com account," with "confirm your email address" hyperlinked.  *Id.* ¶ 10, Ex. C.
7  The hyperlink directs the customer to a Lightinthebox.com webpage where, under "Thanks for
8  confirming your LightInTheBox account," there are hyperlinks to four "Company Policies,"
9  including the website's terms of use and the Intellectual Property Infringement Policy.  *Id.* ¶ 11,
10  Ex. D.  Through these account creation and e-mail confirmation procedures, LITB makes the
11  Lightinthebox.com terms of use agreement highly visible to its customers before they are even
12  able to complete a purchase.  LITB does not sell products through its website without a user's
13  assent to the Intellectual Property Infringement Policy and the arbitration agreement, which are
14  essential components of the terms of use.
15          As alleged in the Complaint, at some unspecified time after May 2014, "[a]n E&E
16  investigator visited [Lightinthebox.com] and purchased" the allegedly infringing products
17  "which were shipped from China to the State of California."  D.I. 1, Compl. ¶ 20.  Like any
18  customer completing a purchase through Lightinthebox.com, the E&E investigator was required
19  to create an account to proceed with the online order.  As part of creating that account, E&E's
20  investigator had to enter an e-mail address, create a password, set a default shipping region, and
21  click the box confirming, "I agree to Lightinthebox.com['s] Terms and Conditions."  L. Shen
22  Decl. ¶¶ 6, 8.  E&E therefore entered into a binding and enforceable contract with LITB by
23  agreeing to the terms of use on Lightinthebox.com before completing the purchases described in
24  the Complaint.
25  **III.    ARGUMENT**
26          The Federal Arbitration Act ("FAA") governs questions of arbitrability in both
27  federal and state courts.  As the Supreme Court has repeatedly stated, the FAA expresses an
28  "'emphatic federal policy in favor of arbitral dispute resolution.'"  *KPMG LLP v. Cocchi*, 132 S.

1  Ct. 23, 25 (2011) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S.
2  614, 631 (1985)); *see Preston v. Ferrer*, 552 U.S. 346, 349 (2008) (the FAA "establishes a
3  national policy favoring arbitration when the parties contract for that mode of dispute
4  resolution"). This policy "applies with special force in the field of international commerce."
5  *Mitsubishi*, 473 U.S. at 631; *see Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 804 (N.D.
6  Cal. 2004). Under Section 2 of the FAA, a "written provision in . . . a contract evidencing a
7  transaction involving commerce to settle by arbitration a controversy thereafter arising out of such
8  contract or transaction, . . . shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2 (2012).
9        The FAA applies to international commercial agreements, like the one at issue
10 here. *See Rogers v. Royal Caribbean Cruise Line*, 547 F.3d 1148, 1152-53 (9th Cir. 2008). The
11 FAA directs that a court may compel arbitration "in accordance with the [parties'] agreement at
12 any place therein provided for, whether that place is within or without the United States."
13 9 U.S.C. § 206 (2012); *see Bauhinia Corp. v. China Nat'l Mach. & Equip. Imp. & Exp. Corp.*,
14 819 F.2d 247, 249-50 (9th Cir. 1987) (explaining that Section 206 empowers a district court to
15 compel arbitration where the agreement at issue designates a forum and noting that "'[a] forum
16 clause should control absent a strong showing that it should be set aside'" (quoting *Bremen v.
17 Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)); *see also Tigra Tech. v. Techsport Ltd.*, No. SACV
18 10-1623, 2011 WL 2710678, at *2-3 (C.D. Cal. July 12, 2011) (granting defendant's motion to
19 compel arbitration in Hong Kong before the HKIAC).
20       Pursuant to ample Supreme Court authority, courts must "'*rigorously* enforce'
21 arbitration agreements according to their terms." *Am. Express Co. v. Italian Colors Est.*, 133 S.
22 Ct. 2304, 2309 (2013) (citation omitted; emphasis added). As the Ninth Circuit has emphasized,
23 courts must "place arbitration provisions on 'the same footing' as all other contractual
24 provisions," and "'ensur[e] that private arbitrations are enforced.'" *Mortensen v. Bresnan
25 Commc'ns, LLC*, 722 F.3d 1151, 1159 (9th Cir. 2013) (citations omitted). The "liberal federal
26 policy favoring arbitration agreements" applies "notwithstanding any state substantive or
27 procedural policies to the contrary." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1749
28 (2011). Moreover, as affirmed by this District, "'the most minimal indication of the parties'

intent to arbitrate must be given full effect, *especially in international disputes*.'" *Concat*, 350 F. Supp. 2d at 804 (emphasis added) (citing *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 478 (9th Cir. 1991)); *Tigra Tech.*, 2011 WL 2710678, at *2.

The parties here entered a binding and enforceable agreement to submit this dispute to arbitration in Hong Kong.  This agreement expressly incorporates the arbitration rules of the HKIAC, which empowers the arbitral tribunal, rather than the Court, to decide threshold issues of arbitrability.  Accordingly, the Court should stay this litigation and compel arbitration before the HKIAC.

### A.   E&E Entered A Valid And Enforceable Agreement To Arbitrate

E&E's investigator bound E&E to the terms of use on the Lightinthebox.com website when he or she registered an online account to complete the purchase of the allegedly infringing products.  D.I. 1, Compl. ¶ 20.  E&E cannot deny that its investigator actively accepted the hyperlinked terms of use, because the investigator would not have been able to proceed with purchasing the allegedly infringing products had he or she not affirmatively clicked the box confirming assent to the terms.  *See* L. Shen Decl. ¶¶ 6, 8; *see id.* ¶ 5, Ex. A.  This form of "clickwrap" agreement, in which a webpage "user manifest[s] his or her assent to the terms of the license agreement by clicking on an icon" in order to proceed provides a user with adequate notice of the agreed upon terms.  *Tompkins v. 23andMe, Inc.*, No. 5:13-cv-05682, 2014 WL 2903752, at *5 (N.D. Cal. June 25, 2014).

The clickwrap agreement enforced by the court in *Tompkins v. 23andMe, Inc.* is identical to the clickwrap agreement at issue here in all critical respects.  In *Tompkins*, the defendant company required that consumers create an online account before using the defendant's product.  *Id.* at *7.  To create an account, consumers had to affirmatively click a box confirming "I ACCEPT THE TERMS OF SERVICE," which appeared near a hyperlink to the full terms.  *Id.*  A user could not create an account or use the defendant's product if he or she did not click the box assenting to the terms.  *Id.*  The court affirmed that this process provided adequate notice of the terms and that users who clicked the box next to the statement "I ACCEPT THE TERMS OF SERVICE" gave valid acceptance of those terms, including the arbitration provision contained

therein. *Id.* at *8. The court further stated that there was adequate consideration for customers' acceptance of the terms of service where in exchange for assenting to the terms, customers received defendant's product. *Id.* (noting that under California contract law, "all the law requires for sufficient consideration is the proverbial 'peppercorn'") (internal citation omitted).

Like the defendant in *Tompkins*, LITB requires that consumers affirmatively click a box indicating assent to LITB's terms of use, with the terms readily accessible by clicking the hyperlinked "Terms and Conditions" located immediately next to the box. *See* L. Shen Decl. ¶¶ 4, 6; *id.* ¶ 5, Ex. A. By requiring this affirmative act—the clicking of the box—consumers are given a full and fair opportunity to review and consider the terms. The binding effect of LITB's terms of use is further supported by this District's ruling in *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 912 (N.D. Cal. 2011). There the court affirmed that because the plaintiff "was provided with an opportunity to review the terms of service in the form of a hyperlink immediately under the 'I accept' button and she admittedly clicked 'Accept,' . . . a binding contract was created." *Id.*

*Tompkins* and *Zynga* are firmly on point and direct enforcement of LITB's terms of use agreement. Moreover, LITB's terms of use clearly advise customers in bold lettering to read the terms of use agreement carefully, including the provision entitled, in bold letters, "**Arbitration**." *See* L. Shen Decl. ¶ 7, Ex. B, at 3. The provisions in the terms of use are not difficult to find or understand. Additionally, all customers are presented with the terms during the account creation and the e-mail confirmation processes and are required to agree to them before they can complete a purchase. *Id.* ¶¶ 6, 8. E&E assented to the terms of use and, in doing so, it entered a binding and enforceable contract with LITB.

B.  **The HKIAC Must Determine Whether E&E's Claims Are Subject To Arbitration**

Where parties clearly and unmistakably evidence their intent to have an arbitrator decide threshold issues of arbitrability, the court's inquiry ends at determining that a valid and enforceable arbitration agreement exists. *See Brennan v. Opus Bank*, No. 13-35580, 2015 WL 4731378, at *4 (9th Cir. Aug. 11, 2015). By assenting to the arbitration provision in LITB's

1 terms of use, E&E has expressed the requisite clear and unmistakable intent that the HKIAC, not
2 the Court, should determine whether E&E's claims are subject to arbitration under the provision.
3 Therefore, the Court should stay this case to allow the HKIAC to determine the arbitrability of
4 this dispute under the Parties' arbitration agreement.

5    Parties to an arbitration agreement may agree that an arbitrator, rather than a court,
6 "has the primary power to decide [the] arbitrability" of disputes between the parties.  *See First*
7 *Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995); *see also Howsam v. Dean Witter*
8 *Reynolds, Inc.*, 537 U.S. 79, 83 (2002).  To empower an arbitrator to determine the arbitrability of
9 a dispute, the parties must provide "clear and unmistakable evidence" of their intention to do so.
10 *See Howsam*, 537 U.S. at 83; *see also Oracle Am., Inc. v. Myriad Group A.G.*, 724 F.3d 1069,
11 1072 (9th Cir. 2013) ("whether the court or the arbitrator decides arbitrability is an issue for
12 judicial determination unless the parties *clearly and unmistakably provide otherwise*") (internal
13 quotation marks removed).

14    E&E provided clear and unmistakable evidence that it intended for the HKIAC to
15 determine the arbitrability of this dispute by agreeing to the arbitration provision in the
16 Lightinthebox.com terms of use.  That provision obligates E&E to submit all disputes with LITB
17 to arbitration before the Hong Kong International Arbitration Center and states that any such
18 arbitration "shall be conducted in accordance with the Commission's arbitration rules in effect at
19 the time of applying for arbitration."  *See* L. Shen Decl. ¶ 7, Ex. B, at 3.  In turn, Article 19.1 of
20 the HKIAC Administered Arbitration Rules vests the arbitral tribunal with the authority to "rule
21 on its own jurisdiction under these Rules, including any objections with respect to the existence,
22 validity or scope of the arbitration agreement(s)."  *Administered Arbitration Rules*, art. 19.1,
23 Hong Kong International Arbitration Center (2013), http://www.hkiac.org/images/stories/
24 arbitration/2013_hkiac_rules.pdf.  Because E&E agreed to arbitrate its disputes with LITB
25 according to the HKIAC rules, the arbitrability of E&E's claims must be determined by the
26 HKIAC.

27
28

Arbitration agreements that incorporate rules like the HKIAC provision provide "clear and unmistakable evidence" of the parties' intent to vest the power to determine arbitrability in the arbitrator. *See Brennan*, 2015 WL 4731378, at \*4; *see also Oracle*, 724 F.3d at 1074-75. The court in *Brennan* recently determined that an agreement that "expressly incorporated the rules of the American Arbitration Association," one of which uses almost exactly the same words as the HKIAC rule and vests in the arbitrator "the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement" constituted "'clear and unmistakable' evidence that the parties intended to delegate the arbitrability question to the arbitrator." *See Brennan*, 2015 WL 4731378, at \*2, \*4; *see also Commercial Arbitration Rules and Mediation Procedures*, rule 7(a), American Arbitration Association (2013), https://www.adr.org/aaa/ShowProperty?nodeId=/UCM/ADRSTG_004103&revision=latestreleased. The court in *Oracle* similarly concluded that incorporation of either the 1976 or the 2010 version of the United Nations Commission on International Trade Law ("UNCITRAL") arbitration rules, both of which give the arbitrator "'the power to rule on'" its "'jurisdiction, including any objections with respect to the existence or validity of'" an arbitration agreement "is clear and unmistakable evidence that the parties agreed the arbitrator would decide arbitrability." *Oracle*, 724 F.3d at 1073-75 (quoting *UNCITRAL Arbitration Rules*, art. 23, para. 1, United Nations Commission on International Trade Law (2010), http://www.uncitral.org/pdf/english/texts/arbitration/arb-rules-revised/arb-rules-revised-2010-e.pdf; *UNCITRAL Arbitration Rules*, art. 21, para. 1, United Nations Commission on International Trade Law (1976), http://www.uncitral.org/pdf/english/texts/arbitration/arb-rules/arb-rules.pdf). Given that the HKIAC, AAA, and UNCITRAL rules contain nearly identical language, E&E's agreement to an arbitration provision that incorporates the HKIAC Rules provides "clear and unmistakable" evidence that it intended for the HKIAC to determine the question of arbitrability.

**C.     Alternatively, The Arbitration Agreement Encompasses E&E's Claims**

Even if the Court were to reserve for itself the question of arbitrability, it should refer E&E's claims to arbitration because the arbitration clause in the terms of use agreement is valid and enforceable and encompasses the dispute at issue.  Consistent with the strong federal policy favoring arbitration, the Supreme Court has recognized a "presumption of arbitrability." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986); *see Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) ("The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . .").  It has affirmed that a court should grant a party's request to arbitrate a claim "'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *AT&T Techs.*, 475 U.S. at 650 (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960)).

In line with this strong presumption, this District has recognized that the "threshold for arbitrability is not high." *Homestake Lead Co. of Mo. v. Doe Run Res. Corp.*, 282 F. Supp. 2d 1131, 1138 (N.D. Cal. 2003) (citing *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999)); *see Hopkins & Carley, ALC v. Thompson Elite*, 10-cv-05806, 2011 WL 1327359, at *2 (N.D. Cal. Apr. 6, 2011) (asserting that the "standard for demonstrating arbitrability is not a high one") (citation omitted).  For a claim to be encompassed by an arbitration provision, the "factual allegations need only 'touch matters' covered by the contract containing the arbitration clause and all doubts are to be resolved in favor of arbitrability." *Simula*, 175 F.3d at 721 (citing *Mitsubishi Motors*, 473 U.S. at 624 n.13 (affirming that "insofar as the allegations underlying the statutory claims touch matters covered by the enumerated articles, [the court] properly resolve[s] any doubts in favor of arbitrability") (citation omitted)).

The arbitration provision in the Lightinthebox.com terms of use agreement states that "[w]here the parties fail to settle [a] dispute within 30 days after such dispute occurs, they agree to submit such dispute to Hong Kong International Arbitration Center (the "HKIAC") for arbitration." L. Shen Decl. ¶ 7, Ex. B, at 3.  The reference in this provision to a "dispute" between

1   the parties does not set any limitations on the types of disputes to which those provisions apply.

2   Given the absence of any qualifying language, the scope of the arbitration provision should be

3   broadly construed.  *See Athena Feminine Techs. Inc. v. Wilkes*, No. C 10-04868, 2011 WL

4   4079927, at *11 (N.D. Cal. Sept. 13, 2011) (affirming that parties' arbitration agreement referring

5   "[a]ll disputes" to binding arbitration was properly construed "as requiring the parties to submit

6   all disputes between them to an arbitrator" and that any ambiguity at issue in interpreting the

7   meaning of "all disputes" "must be resolved in favor of compelling arbitration"); *see also*

8   *Savetsky v. Pre-Paid Legal Servs., Inc.*, No. 14-03514 SC, 2015 WL 4593744, at *9 (N.D. Cal.

9   July 30, 2015).  Under this broad arbitration clause, E&E's copyright and trademark claims are

10  subject to arbitration as long as the underlying factual allegations "touch matters" covered by the

11  terms of use agreement.  *See Simula*, 175 F.3d at 721 (citation omitted); *see also* L. Shen Decl.

12  ¶ 7, Ex. B.

13  Here, the factual allegations advanced by E&E clearly touch matters covered by

14  the terms of use agreement.  First, the agreement sets forth an "Intellectual Property Infringement

15  Policy" outlining the procedure for intellectual property owners to follow in the event that they

16  believe any of the content or products offered for sale on Lightinthebox.com infringe their

17  intellectual property rights.  L. Shen Decl. ¶ 7, Ex. B, at 2.  The terms of use therefore specifically

18  provide for the resolution of copyright and trademark disputes.  *Id.*  Second, by purchasing

19  allegedly infringing products on LITB's website, E&E's investigator agreed to the terms of use.

20  *See* D.I. 1, Compl. ¶ 20.  Because E&E relies on this alleged purchase in its Complaint to support

21  its copyright and trademark claims against LITB, E&E's claims are subject to the arbitration

22  clause in the terms and use agreement.  *See id.*; *see also Genesco, Inc. v. Kakiuchi & Co.*, 815

23  F.2d 840, 846 (2d Cir. 1987) (holding that if factual allegations touch matters covered by the

24  parties' contractual agreements, "then those claims must be arbitrated, whatever the legal labels

25  attached to them")); *see also Simula*, 175 F.3d at 724 (compelling arbitration of plaintiff's claims

26  of false and misleading representation under the Lanham Act where the allegations underlying the

27  claims had a direct relationship to the parties' agreement containing a binding arbitration clause).

28

DEFENDANT LIGHT IN THE BOX LIMITED'S MOTION TO COMPEL ARBITRATION         CASE NO. 3:15-CV-00069-EMC

1    The agreement's arbitration provision states that where such a dispute is not resolved in 30 days, the parties agree to submit it to arbitration.  L. Shen Decl. ¶ 7, Ex. B, at 3.  E&E agreed to this provision and cannot now avoid it.

*Athena Feminine* is instructive. *See* 2011 WL 4079927, at *11-12.  There, this District held that the plaintiffs' claims of patent infringement and inducing patent infringement were subject to the arbitration clause in the parties' Distributor Agreement stating, "[a]ll disputes will be submitted to binding arbitration." *Id.* at *11.  In opposing the defendant's motion to compel arbitration, the plaintiff contended that its claims arose from a separate confidentiality agreement, which did not contain an arbitration clause and which the parties entered into a month prior to the formation of the Distributor Agreement.  *Id.*  The plaintiff further argued that the Distributor Agreement did not incorporate or even reference the confidentiality agreement upon which its claims were based.  *Id.*  The court rejected the plaintiff's arguments, affirming that the breadth of the relevant arbitration provision as reaching "all disputes" between the parties properly encompassed the plaintiff's claims.  *Id.*  The court noted that the plaintiff's factual allegations need only touch matters covered by the contract containing the arbitration clause. *Id.* at *12.  The court reasoned that the plaintiff alleged the defendant had used its business relationship with the plaintiff to infringe the asserted patent, and because the relevant arbitration agreement touched upon this business relationship, the plaintiff's patent claims were arbitrable. *Id.*

Here, the arbitration provision in the Lightinthebox.com terms of use agreement is substantively identical to the clause at issue in *Athena Feminine*.  The Intellectual Property Infringement Policy in the terms of use relates directly to E&E's copyright and trademark claims.  Moreover, the factual allegations in E&E's Complaint stem directly from its use of Lightinthebox.com and its agreement to the website's terms of use.  The terms of use agreement and its arbitration provision therefore touch upon E&E's factual allegations and asserted claims.  Given this connection and the strong policy favoring arbitration, the Court should compel arbitration of this dispute, as contemplated by the agreed upon terms of use.

## IV. CONCLUSION

For all of the foregoing reasons, the Court should stay this litigation and compel arbitration of E&E's claims.

Dated: August 20, 2015            SIMPSON THACHER & BARTLETT LLP

By: /s/ Harrison J. Frahn IV
Harrison J. Frahn IV
hfrahn@stblaw.com
2475 Hanover Street
Palo Alto, California 94304
Telephone: (650) 251-5000
Facsimile: (650) 251-5002

*Attorneys for Defendant
Light In The Box Limited*