Pages 1 - 25

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Edward M. Chen, Judge

E & E CO., LTD., a California      )
corporation,                       )
                                   )
          Plaintiff,               )
                                   )
  VS.                              )      NO. C 15-00069 EMC
                                   )
LIGHT IN THE BOX LIMITED, a Hong   )
Kong Corporation,                  )
                                   )
          Defendant.               )
_____  )

                         San Francisco, California
                         Thursday, September 24, 2015

                 **TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiff:
                    TINGLEY LAW GROUP, PC
                    10 Almaden Boulevard - Suite 430
                    San Jose, California 95113
               BY:  **STEPHEN D. COLLINS**
                    **KEVIN W. ISAACSON**
                    **ATTORNEYS AT LAW**

For Defendant:

                    SIMPSON THACHER & BARTLETT LLP
                    2475 Hanover Street
                    Palo Alto, California 94304
               BY:  **HARRISON J. FRAHN IV**
                    **CHRISTOPHER W. JAMES**
                    **ATTORNEYS AT LAW**

Reported By:        Kelly L. Shainline, CSR No. 13476, RPR
                    Court Reporter Pro Tem

Thursday - September 24, 2015                              2:00 p.m.


        **THE CLERK:**  Next case is 15-69, E & E Company versus Light in the Box Limited.

    Counsel, please step forward and state your appearances.

        **MR. FRAHN:**  Good afternoon, Your Honor.  Buzz Frahn at Simpson Thatcher for the defendant and movant Light in the Box.

        **THE COURT:**  All right.

        **MR. FRAHN:**  And I'm joined by my colleague, Mr. Chris James.

        **THE COURT:**  All right.  Thank you.

        **MR. COLLINS:**  Good afternoon, Your Honor.  Stephen Collins, along with Kevin Isaacson, Tingley Law Group, on behalf of plaintiff.

        **THE COURT:**  All right.  Thank you, Mr. Collins.

    This is defendant's motion to compel arbitration, and it's undisputed that had it not been for the purchase of the sample which then triggered -- which then triggered a contractual -- arguable contractual agreement that contained an arbitration clause, this fairly straightforward copyright design and trademark suit would not be subject to an arbitration.  It arises solely because -- was it one sample or whatever it was -- was purchased.

        **MR. COLLINS:**  Two investigative purchases.

        **THE COURT:**  Two investigative purchases.

And just at a common sense level, it's hard for me to understand why a cause of action that exists and stands alone, that is based on conduct vis-a-vis selling the third parties violating the IP holder's putative rights would be subject to arbitration because in the context of investigation, evidence was obtained to bolster the suit or whatever it is that somehow that thread pulls the entire case into arbitration.

I just -- I'm having trouble understanding that concept.

**MR. FRAHN:**  I think that's probably directed at me, so let me address it.  The two products that they've identified as specifically infringing their claims are the ones as Your Honor says triggered the obligation under the contract.

The other allegations are so vague as to not even put us on notice under Rule 8, and I don't know if you've seen the docket recently, but we have filed a motion to dismiss the First Amended Complaint because it fails to comply with Rule 8.

Even as to the two products we've identified, for other reasons that I don't need to go into now, but as to everything else, it is so completely vague as to which designs, which products, which copyrights.  There's absolutely no listing identification whatsoever even to satisfy the relative liberal standards of Rule A -- Rule 8.

So set aside for a moment, you know, the great range of their claims however broad they may be beyond the two products at issue, because I don't think they should survive.  You know,

if they do survive, perhaps the question that you posed is, you know, goes to the heart of the issue.  Why should they have to arbitrate as to, you know, the vast range of claims?

But I don't think anything beyond these two products they've identified is going to survive.  In any event, that decision is not for today.

As to the two products they have identified, it's undisputed that they purchased them, it's undisputed that they must accept the terms of service, and it's undisputed there's an arbitration agreement in those terms of service.

**THE COURT:**  But the claim doesn't arise out of the purchase out of these products.  It arises out of the fact that they're selling these products and advertising these products and presumably selling them to third parties in alleged violation of the putative IP owner's rights.

Now, they did include in paragraph 19 a fact allegation that the investigator went and, kind of, got proof of this and got specific, but it is the obtaining of evidence -- now if they are suing to recover their -- you know, for damages arising out of this purchase or something that had to do with this transaction, and -- you know, I could see that.  Or if there's a warranty and they feel it's a breach of warranty or something, that would be a classic sort of example.

But here the E & E investigator purchased these items, from my understanding of all this, as sort of evidence

acquisition as part of an investigation, not as -- and that the claims would arise not from that purchase but really from the sale and advertisement of these goods by the defendant.

**MR. FRAHN:** I'm not sure that's entirely accurate, Your Honor. And I want to address it at two levels.

First at the level of the Complaint. Because in paragraph 19 and elsewhere in the First Amended Complaint, they do say it's the actual designs and goods that are the basis of the claim.

And, secondly, I believe the argument that you're making about whether it arises from or relates to the agreement, really goes to a question about the scope of the arbitration obligation, not whether -- not to, you know, not to whether or not one exists but really rather one as to the scope.

And your only -- the Court's job, once it finds that there's an agreement and once it finds that the agreement contains an arbitration clause, it's the job of the Court to determine whether or not the parties have delegated the question of scope or the question of arbitrability to the arbitrator. And that's exactly what the arbitration clause in this instance does. It delegates to the arbitrator just like the, AAA rules, just like the UNCITRAL rules to the arbitrator the decision to rule on his or her own jurisdiction and any objections to that jurisdiction. So that's where the issue with regard to the scope of it, whether it covers this dispute

or does not, should be resolved.

And in cases like the plaintiffs have relied upon such as *Faegin versus LivingSocial*, and others like that, where they advocate for a limited scope of the arbitration agreement, those cases all involve arbitration clauses that contain words limiting the clause, like, "arising out of" or "related to"; and in those cases, and I'm thinking of *Faegin* in particular, the Court has said that that limiting language is of significance, of great significance, in interpreting the scope of the arbitration agreement and determining which matters fall within and which matters don't.

We don't have that here.  And in any event, I wouldn't suggest that you should be weighing the scope because the arbitration agreement itself delegates to the arbitrator the question of arbitrability.

**THE COURT:**  What's your response to that?

**MR. COLLINS:**  Your Honor, first off, I'd like to address whether or not there's an enforceable agreement. Your Honor touched on, I believe, procedural unconscionability.

And when we're looking at this particular transaction, as Your Honor correctly identified, these purchases were made as the best evidence of the defendant's alleged infringement.

A Complaint could have been drawn and filed and served and maintained without any of those purchases based on the advertising alone and the posting of these infringing products

on defendant's website.  That alone would have sustained a cause of action.

But as Your Honor is aware, plaintiff has a duty to investigate.  Plaintiff elected to conduct investigator purchases which were done in this particular case.

And when you look at procedural unconscionability, Your Honor, you're looking at impression bargaining power, inequality bargain --

THE COURT:  Why are we talking about procedural?  Because to even get there, you have to find that there's -- are you conceding that this is already within the scope?

MR. COLLINS:  I am not conceding that.

THE COURT:  Because if we're in the scope, then we deal with procedural substantive unconscionability.  If we're not in the scope, if we're not even under the clause, you don't have to look at the question of the enforceability and validity of the clause.  So I'm looking at the threshold question and the gateway question.

MR. COLLINS:  Correct.

THE COURT:  So I don't really want to talk about unconscionability.  That's not the issue I'm focusing on right now.

MR. COLLINS:  Okay, Your Honor.  I was merely directing your attention to there's no other alternative.

But with respect to the threshold issue, the claims are

intellectual property claims.  You correctly identified that these are not disputes related to the price of a product. They're not disputes related to shipping a product with a product for damage.  It's intellectual property that purchases that were made to support plaintiff's investigation of infringement -- of the defendant's infringing product.

If you agree with the defendant's interpretation, you come to the absurd conclusion that any plaintiff who's seeking to investigate infringements of its intellectual property is in a position where it cannot adequately investigate those claims without fear of being -- essentially, pigeonholing itself into binding arbitration and, in this case, binding arbitration in Hong Kong to which we never agreed.

So the situation is, plaintiffs, you have an obligation to investigate your claim but you can't do that without forfeiting your rights to bring that particular claim in a Federal Court in California.  You are subjecting yourself to binding arbitration notwithstanding the fact that you could bring a claim without making those purchases, but the best evidence of the infringement are those purchases themselves.

**THE COURT:**  What is the evidence about the E & E investigator that purchased the goods?  Were the goods purchased in the name of E & E?  Who was the party to that contract?

**MR. COLLINS:**  The two individuals who made the

purchases in this particular situation were -- are the employees of E & E, and they were directed to make the purchases after E & E was alerted to the infringing items being offered for sale on Light in the Box's website.

THE COURT:  And were the purchases in the name of the individuals or the name of E & E?

MR. COLLINS:  They were in the name of the individuals themselves.

THE COURT:  So, technically, E & E is not a party of that contract but only by perhaps by the way of agency; right?

MR. COLLINS:  Correct.

THE COURT:  All right.  So then the question of when an agent bound by an individual's contract obligations raises a threshold question of which parties may be bound whether nonparty, nonsignatory may be bound.  The usual answer to that is that's a question for the Court.

Even when you have a broad delegation clause, the Rent-A-Center kind of clause, that there's a threshold issue even before you get there and that is as a nonsignatory bound to a contract.  And there's lots of law on that.  I opined on that.  The *Carrier* case and a number of cases, the *BestBuy* case, that's a core question.

And so that maybe that's the question.  Is E & E bound to this contract that has an arbitration clause because its agent, acting on its behalf, went out and bought it?  I think that's

one way of looking at it.  And that hasn't thoroughly been briefed.

MR. FRAHN:  This is, in fact, until we heard Mr. Collins explain about these two individuals that was the first anyone's heard about that, and it wasn't in the briefs. And they didn't challenge, you know, on the grounds of agency existed.

Based on the simple explanation he's given, it seems to me and, obviously, without the studying of the case that you mention; but it was done at their direction.  They entered into an agreement.  They certainly weren't doing it as a frolic and detour from their normal job obligations.

THE COURT:  Well, what's your analysis as to why E & E should not be bound by what its employees did at its behest?

MR. COLLINS:  Well, I think, Your Honor, with respect to agency, you know, that issue wasn't briefed because they're -- first of all, there is no agreement to arbitrate. Second of all, the issue of arbitrability was never delegated to -- was never clearly and unmistakably delegated to the arbitrator.  So with respect to the issue of agency, we don't need to get there.

THE COURT:  Well, their response is if you get -- if you find there is a contract -- for instance, if E & E signed this contract and it bought the items, the arbitration clause is pretty broad because it says parties -- first of all, it

talks about, you know, if you have an intellectual property claim, what you do and all this stuff.

And then it goes on to say, if the parties failed to settle dispute -- there's no article or descriptive word in front of dispute -- settle dispute within 30 days after it occurs, they agree to submit such dispute to Hong Kong International Arbitration Center for arbitration, and there is evidence that the -- that there are rules that provide that all -- that the arbitrator has the -- that the HKIAC provide that the arbitral tribunal may rule on its own jurisdiction.

MR. COLLINS:  And with respect, Judge, that's not what the actual arbitration agreement says.  It says that the commission -- the commission's rules apply, not the HKIAC rules.

THE COURT:  And there is no commission?

MR. COLLINS:  There is no commission.  And, you know, we're looking at a contract of adhesion that's drafted by the defendants.  They have defined the terms.  They have elected to define the terms themselves.

When they're talking about the Hong Kong International Arbitration Commission.  They follow that in quotes -- in parenthesis "HKIAC," and then follow that immediately in the adjacent clause where the -- and they capitalize "commission" which implies -- not implies, which states that is a defined term which is nowhere defined in that particular clause.

**THE COURT:** So if it had said instead of "commission," "HKIAC administered arbitrator rules," you would concede that's pretty broad. Their rules are pretty broad.

**MR. COLLINS:** Right. And if you look at the *Concat* case, *Concat versus Unilever*, which is one of the cases that they have cited in their brief. That particular arbitration clause said, they agreed to: (reading)

"...arbitration under the Rules of the London Court

of International Arbitration, which Rules are...

incorporated by reference into this --"

They could have been clear. They could have, like in the *Concat* case, they could have clearly and unmistakably delegated arbitrability to the arbitrator, but they didn't.

And, Your Honor, if this leads to -- we're reading the clear words of this alleged agreement here. These are the words that Light in the Box put down. E & E didn't make this up. The fact that there is confusion and ambiguity in there is not something that should be held against or construed against E & E.

We didn't -- if you find that there's agreement, we had no option but to sign this agreement. We would say that there's a threshold issue that's not touched upon the allegation in the Complaint. We would say there's no agreement. We would also say that even if there is agreement, the arbitrability has not been delegated to the HKIAC.

**THE COURT:** Because of the word "commission" which doesn't exist?

**MR. COLLINS:** Actually, there are a number of commissions it could be.  There's the Beijing Arbitration Commission, The China International Economic and Trade Arbitration Commission.  I can go on, but there are a number of commissions that it could be.

In fact, one of the cases cited -- if you look at the *Tigra versus Techsport,* Your Honor.  In that particular arbitration clause you said -- the arbitration clause -- this is cited in defendant's brief:  (reading)

"Any dispute arising from or relating to this agreement, including the existence, validity, or termination of this agreement shall be adjudicated by the Hong Kong International Arbitration Center (HKIAC)."

That provision is a clear, unmistakable delegation of arbitrability to the HKIAC.  They could have used that language.  They didn't.  The language is ambiguous, it's unclear, and it should be construed against the drafter.

**THE COURT:** All right.

**MR. FRAHN:** Your Honor, let me just try to address those in order because I think there's several different concepts that are being a little bit confused.

First, back to the agency point.  I didn't hear any argument distinguishing why agency was not given to the E & E

investigators.  I think it's conclusive that the agency should not be a barrier to enforcing the arbitration agreement here.

Secondly, on the idea that there is an ambiguity in the arbitration clause because it's unclear that there's -- which set of rules we're referring to, I think you read -- you know, you read the clause in context.  And there is no ambiguities.  It's a definitive article.  It's clearly a reference back to the prior -- to the prior reference to HKIAC.

**THE COURT:**  It says "Commission" with a capital C.  So how do I know -- it didn't say HKIAC.  It just says the commission, and it's been represented to me there are a number of other commissions that might have -- whose rules might have been evoked.

**MR. FRAHN:**  First of all, I haven't seen any of those referenced in any of the briefing.  So I'm not quite sure which -- you know, where that list has come from.

But regardless, if there is a concern that there's not a clarity, exact precise clarity as to the rules, then I think we're exactly in the same land as *Brennan*, the Brennan case and the *Oracle* case where the parties, I believe in Brennan, adopted a generic reference to the American Arbitration Association rules.  There are no actual rules by the set under that name.  There are multiple, multiple sets of rules, as we know.

If you've read Judge Koh's opinion from the *Tompkins* case,

there are multiple AAA arbitration rules.  Yet, the Court in *Brennan* found that as between commercial parties, a reference to the AAA rules sufficiently delegates arbitrability because the rules have the same clause in terms of the arbitrator's ability to rule.

Same thing in Oracle with regard to UNCITRAL.  There's not -- you know, it was unclear.  The Court -- sorry.  The Ninth Circuit actually observes that there were multiple potential versions of the UNCITRAL rules at issue.  It wasn't sure which ones had specifically been invoked by the parties and, yet, it went on to find because the most recent version contained the arbitration or arbitrability language that the parties had delegated that.

The *Goldman Sachs* case I think is instructive.  It's a Ninth Circuit 2014 case.  It says:  (reading)

"In order to give due regard to the federal policy in favor of arbitration, resolve ambiguities as to the scope of the arbitration in favor of arbitration."

And as the California Appellate Courts have said in the *Tompkins* case, courts don't adopt a strained or absurd interpretation in order to create ambiguity.  So I would --

**THE COURT:**  Well, now there's a distinction.  Scope of arbitration clause and a threshold question in *Rent-A-Center* and all that we know that normal presumption that issues of arbitrability, some of those gateway issues are not in the

ordinary course of things presumptively within the jurisdiction. You have to prove otherwise. The burden of proof is reversed. It's got to be unmistakable and clear that that was a party's intent.

So that raises a question. When the drafter and the advocate of arbitration and delegation here uses a term, perhaps mistakenly, but uses an ambiguous term, particularly when it's a term in a foreign country. It's not AAA. I mean, you can say people ought to be charged with the knowledge of AAA has been around forever. But something with the HKIAC I have no idea whether a company like E & E would have any inkling what that is.

So, you know, given that presumption, it's not so clear to me that, well, we're just going to forgive this mistake, this typo.

**MR. FRAHN:** Well, the rules -- I haven't seen -- it would be one thing if there were competing rules that the plaintiff has said, Well, under some rules arbitrability is delegated to the arbitrator, you know, the rules that Light in the Box cites. Then there's these other rules that are potentially applicable.

And, again, this is the argument that I haven't seen them make. They have not come forward to say under any other set of rules would arbitrability not be delegated to the arbitrator. There's been absolutely no showing on that.

**THE COURT:**  Let me ask you this on the merits.  Let's say I decide the delegation.  I have to decide the merits of whether this -- now we get to the scope question.

**MR. FRAHN:**  Right.

**THE COURT:**  What about that?

**MR. FRAHN:**  So the question then --

**THE COURT:**  That unusual situation --

**MR. FRAHN:**  Right.

**THE COURT:**  -- where this arises out of the purchase of a sample but the cause of action itself is not really grounded in this -- it has to be collateral to the -- what do you do in that case?

**MR. FRAHN:**  Well, I mean, first of all, I think whether or not the cause of action, you know, arises out of or relates to the arbitration agreement, that's only at issue when you've got language in the arbitration clause that limits it in that fashion.  It is not so limited here; right?

So *Faegin versus LivingSocial* -- I think it's another case that the plaintiffs cited -- where the limiting language arising from or relating to meant that the scope of the arbitration clause had to be construed narrowly.  That's not the case here.

Indeed, and to come back to, I think Your Honor had a valid point, in terms of the resolving ambiguities as to the scope of the arbitration.  In this case that would be the lens

through which you would review the scope issue, along with the lens of, you know, the significant presumption that the Supreme Court has noted for decades in favor of arbitrability.  The emphatic federal policy that's laid out.

And that takes you to whether or not the, you know, the dispute between the parties touches matters that are addressed within the agreement, and they certainly do.  You know, not only is there -- the broad scope of the arbitration clause itself, but earlier in the terms of use agreement there's intellectual property infringement section that talks about how to address and raise a claim for intellectual property infringement.

So, clearly, the claim that E & E's intellectual property has been infringed by these two items that they purchased and had shipped here, that is squarely within -- it doesn't just touch it -- it's squarely within the subject matter of the agreement.

**THE COURT:**  And what about that?  Because this does -- this arbitration clause comes into context of an IP -- this very kind of dispute, doesn't it?

**MR. COLLINS:**  Your Honor, with respect to this arbitration provision, defendant's argument seems to be that since there isn't any limiting language in the arbitration provision, that we should give it -- that this Court should give it expansive language.

And tellingly, if you look at the arbitration provisions of every single case cited by plaintiff -- excuse me -- by defendant in their motion and in their reply, every single arbitration clause has some variation of "any dispute arising," "all controversies," "any dispute," "any dispute," "all disputes."  There is no such qualifying language.

THE COURT:  It just says "dispute" with no descriptive.

MR. COLLINS:  So they would say that since it says -- just says "dispute," that you should say, Well, we should insert language into this provision to say "Any and all disputes arising out of whatever transaction is alleged." Where an equally appropriate reading could be "any contractual dispute regarding the purchase."

THE COURT:  Except in the same contract it talks about, you know, intellectual property infringement policy and the arbitration clause follows that.  So --

MR. COLLINS:  It talks about intellectual property infringement in the context of notification of Light in the Box, and it also talks about intellectual property in the context of violation of Light in the Box's own intellectual property.  It does not speak to claims of intellectual property against Light in the Box itself.

MR. FRAHN:  Your Honor --

MR. COLLINS:  So I disagree that --

THE COURT:  Well, it does say if you are an intellectual property owner, if you believe Light in the Box sale or offer to sale --

MR. COLLINS:  Yes, it provides a notification.

THE COURT:  Yeah.

MR. COLLINS:  And that's it.

THE COURT:  And then you go on and say, you know, you got to provide this, this, and this; and then below that an arbitration clause -- or somewhat below that later on.

MR. COLLINS:  Considerably below that, Your Honor.

THE COURT:  How much considerably below that by the way?

MR. FRAHN:  It's the intellectual property infringement policy is in the middle of the second page and the arbitration agreement is on the middle of the third page.

THE COURT:  And what's in between?

MR. FRAHN:  There's a termination provision, a disclaimer, order of acceptance, transfer of title, EU payments, typos, pricing.

THE COURT:  Okay.  I see it.

MR. FRAHN:  I have my highlighted marked-up copy if that would be --

THE COURT:  No, I see it.  I have it.

MR. FRAHN:  Okay.

THE COURT:  Well, so there are quite a few provisions

in between it appears.

MR. FRAHN:  It's not a -- well, I mean, it's only a three-page document to begin with but --

MR. COLLINS:  And Judge --

MR. FRAHN:  The question really is whether, you know, if you believe -- in the intellectual property infringement policy -- if you believe, as it says, that my client is infringing any trademark, copyright, patent, or all other intellectual property law, here's what you should do.

And the natural assumption is if that is a dispute, because I believe my intellectual properties infringed, and we don't resolve it through that process, it's an ongoing dispute and covered by the only dispute resolution clause in the entire agreement, which is the arbitration clause.

THE COURT:  Well, except there's no contract. Somebody just says, Hey, you're violating my copyright.  You know, you can't unilaterally impose a right to arbitration.

MR. FRAHN:  I agree, but that's not the situation we find ourselves in here.

MR. COLLINS:  Well, actually the terms of use attempt to do that.  If you look at the second paragraph, the terms of use, "merely accessing, browsing, or otherwise using the site."

So if you were coming to Light in the Box with a claim for infringement and the only way you could do that is to look at their website, by their terms of use you have --

**THE COURT:** Merely using the site, it's like a web app or whatever you call it.

**MR. FRAHN:** Browser app.

**THE COURT:** Right.

**MR. FRAHN:** That's not the basis that we're relying upon, Your Honor. There's no dispute here that the E & E folks clicked the box to accept the terms of use. That's really an undisputed fact.

So the question then is whether or not the arbitration -- the scope of the arbitration agreement should be read to include this matter over intellectual property. And I think the -- you know, there's lots of things I could say, but I think *AT&T*, the Supreme Court case, said it best: (reading)

"Unless it can be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute, it's within the scope."

**THE COURT:** All right. So here's how I see the analysis. The first question is, is a nonnominal signatory party, here E & E, bound, whether it's through an agency theory or whatever theory, because its employees signed? That's something you haven't addressed, and I think that's worth looking at. And I'd like to give you one week to file short supplemental briefs. No more than seven pages. We don't need a lot of that.

Depending on that answer, then we may get to the delegation clause.  This whole question about commission and, you know, whether that's clear and that may determine if there is -- if the party is bound, does it go -- is it the judge or the arbitrator decide, who decides.  Then the next question.

And if it is determined that the Court decides that question, then it has to get into the scope question which is this whole settled dispute of settling any and all disputes arising out of, et cetera, et cetera, and the whole question. But there's kind of a natural sequence of things.  Some which may be obviated depending on how far it comes out.  And you brief the last two.  I don't need further briefing on those two questions.

This first thing I've now raised with you whether it's agency theory or what.  I think that's a threshold question to be useful and any authorities you might have on that.

So I'm going to take it under submission.  Once you submit within seven days, next Thursday, short with some authorities that you think would be helpful to resolve that, and I will take it under submission at that point.

MR. FRAHN:  So just to be clear about the housekeeping process, Your Honor, you want us as the movant to submit a short supplemental brief?

THE COURT:  Both of you just cross brief.

MR. FRAHN:  Cross brief.  Okay.

May I ask in the next day or so or at the Court's directive that E & E in the next day or so to describe to us the facts -- we haven't had any discovery here.  We don't know anything about the underlying relationship.  As I said, the first I heard about it was from the podium.

**THE COURT:**  All right.  I think that's a fair request.  What are the facts?  I think you've stated that these are employees, but it was purchased, I guess, in their name but paid for by E & E, I take it?

**MR. COLLINS:**  I believe it was paid for out of their pockets but, again, I'll have to revisit with the client and speak specifically about who paid for what.

**THE COURT:**  All right.  If you would -- I'll make an interrogatory request on part of the Court.  If you could describe the circumstances -- I know it's unusual but I would like to get this resolved and not have to go to an evidentiary hearing -- what the facts are regarding who these folks were, what their role was, what the economic nature of the transaction, et cetera, any, you know, direction that they were working under, whatever facts may be relevant under the case law here as we find it.

So let's do that and I'll take it under submission.  If I feel like we need a further hearing or interim hearing or something like that, heaven for bid --

**MR. FRAHN:**  And can I get a representation as to when

we would receive that?  Obviously, seven days is a pretty tight time frame on the supplemental briefs.

THE COURT:  Can you do it by either the end of tomorrow or Monday?

MR. COLLINS:  Monday, I think would be better, Judge.

THE COURT:  Okay.

MR. FRAHN:  All right.  Thank you, Your Honor.

MR. COLLINS:  Thank you, Your Honor.

THE COURT:  Thank you.

(Proceedings adjourned at 2:41 p.m.)

## CERTIFICATE OF REPORTER

I, KELLY SHAINLINE, Court Reporter for the United States District Court, Northern District of California, hereby certify that the foregoing proceedings in C 15-00069 EMC, E & E Co. Limited v. Light in the Box Limited, were reported by me, a shorthand reporter, and were thereafter transcribed under my direction into text; that the foregoing is a full, complete and true record of said proceedings as bound by me at the time of filing.

The validity of the reporter's certification of said transcript may be void upon disassembly and/or removal from the court file.

_____

Kelly Shainline, Court Reporter

Sunday, September 27, 2015