Harrison J. Frahn IV (Bar No. 206822)
hfrahn@stblaw.com
SIMPSON THACHER & BARTLETT LLP
2475 Hanover Street
Palo Alto, California 94304
Telephone: (650) 251-5000
Facsimile: (650) 251-5002

*Attorney for Defendant Light In The Box Limited*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

E & E CO., LTD., a California corporation,

Plaintiff,

vs.

LIGHT IN THE BOX LIMITED, a Hong Kong corporation,

Defendant.

Case No. 3:15-CV-00069-EMC

**Judge Edward M. Chen**

**LIGHT IN THE BOX LIMITED'S POST-HEARING SUPPLEMENTAL BRIEF IN FURTHER SUPPORT OF ITS MOTION TO COMPEL ARBITRATION**

**HEARING HELD**
Date: September 24, 2015
Time: 2:00 p.m.
Place: Courtroom 5
Judge: Honorable Edward M. Chen

**TABLE OF CONTENTS**

INTRODUCTION ........ 1

SUPPLEMENTAL FACTUAL BACKGROUND ........ 1

ARGUMENT ........ 2

I. Agency is a generally accepted ground for compelling nonsignatories to arbitrate ........ 2

II. As an employee of E & E, Mr. Wang typifies the agency relationship ........ 3

III. By making the relevant purchases on behalf of and under the express authorization of E & E, Mr. Wang was acting within the scope of his agency relationship ........ 5

IV. No further special or additional requirements are necessary to bind E & E ........ 6

CONCLUSION ........ 7

Defendant Light in the Box Limited ("LITB") respectfully submits the following supplemental brief in further support of its Motion to Compel Arbitration, as requested by the Court during the September 24, 2015 Hearing on that motion.

**INTRODUCTION**

Pursuant to the Court's instruction, the scope of this briefing is limited to the issue of whether the Plaintiff, E & E Co., Ltd. ("E & E"), is bound to the Terms of Use to which its employee agreed, including the arbitration provision contained therein. The answer to this inquiry must be a resounding "YES."

A valid contract was formed between E & E's employee and LITB when the employee checked the online box affirmatively indicating acceptance of the Terms of Use. Thus, as the Court stated, the question is whether "E & E [is] bound to this contract that has an arbitration clause because its agent acting on its behalf, went out and bought" products from LITB and agreed to those terms. D.I. 51, Transcript of 9/24/15 Hearing ("Hearing Tr.") at 9:23-25.

It is well settled that, under traditional theories of agency, a nonsignatory to a contract with an arbitration provision may be compelled to arbitrate. It is also indisputable that an employee acting on behalf of, in the interest of, and under the specific direction of their employer satisfies every tenet of California agency law necessary to bind the nonsignatory employer to a contract. Having satisfied this threshold question, the arbitration agreement in LITB's Terms of Use must be given its full effect.

**SUPPLEMENTAL FACTUAL BACKGROUND**

As previously addressed in LITB's Motion to Compel Arbitration, the agreement in question was formed when an "E & E investigator" visited the lightinthebox.com website and purchased the allegedly infringing products—an act that necessarily required the "E & E investigator" to create an account and affirmatively check a box indicating their acceptance of the LITB Terms of Use. *See* D.I. 34, at 2-4.

Pursuant to the Court's instructions, E & E furnished additional information describing the facts and circumstances of those purchases.[1] The "E & E investigator," as described in the First Amended Complaint ("FAC"), was identified as Mr. Zeming Wang, an individual "employed by Plaintiff, E & E Co. Ltd." Exhibit A, E & E Co., Ltd's Response to Court's Request for Information, dated September 28, 2015 ("E & E Response"), at 2:3. Mr. Wang was regularly employed by E & E and is not a third-party investigator, an independent contractor, nor a temporary employee.

E & E further admitted that its employee, Mr. Wang, acted under the express direction of E & E's Vice President, Susan Wang, who "requested that Mr. Wang order the Goods" from lightinthebox.com. *Id.* at 2:11-13. Mr. Wang followed this direction and purchased the accused products. The products then "were retained by E & E." Further, "E & E reimbursed Mr. Wang for the purchase." *Id.* at 2:4-7. These products are the basis of E & E's allegations in this case. D.I. 35 (FAC) at ¶ 19.

## ARGUMENT

### I. Agency is a generally accepted ground for compelling nonsignatories to arbitrate

E & E must be compelled to arbitrate through its signatory agent, Mr. Wang. Pursuant to the Supreme Court's directive in *Arthur Andersen LLP v. Carlisle*, federal courts look to state law to determine whether a nonsignatory may be bound to arbitrate. *See Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1232 n.8 (9th Cir. 2013). Under California state law, it is clear that a signatory to an arbitration agreement can compel a nonsignatory to arbitrate if a "preexisting confidential relationship, such as [] agency," exists between the nonsignatory and the person or entity that entered into the agreement—a relationship that therefore "makes it equitable" to require the nonsignatory to arbitrate. *Westra v. Marcus & Millichap Real Estate Inv. Brokerage Co.*, 129 Cal. App. 4th 759, 765 (Cal. Ct. App. 2005). This Court has also recognized that "there are legal theories, such as agency and estoppel, in which non-signatories to an arbitration agreement may compel or be compelled to arbitration." *In re Carrier IQ, Inc. Consumer Privacy Litigation*, No.

[1] The additional information provided consisted of only fifteen lines of text. To the extent necessary, LITB reserves the right to seek further discovery on this issue.

C-12-md-2330 EMC, 2014 WL 1338474, *5 (N.D. Cal. Mar. 28, 2014) (quoting *Xinhua Holdings Ltd. v. Electronic Recyclers Int'l, Inc.*, No. 1:13–CV–1409 AWI SKO, 2013 WL 6844270, at *5 (E.D.Cal. Dec. 26, 2013)).

In fact, "California courts have repeatedly enforced arbitration agreements against [parties] who never agreed to arbitrate the dispute," *Keller Constr. Co. v. Kashani*, 220 Cal. App. 3d 222, 228 (Cal. Ct. App. 1990), and the "common thread of" all these cases is "the existence of an agency or similar relationship between the nonsignatory and one of the parties to the arbitration agreement," *NORCAL Mut. Ins. Co. v. Newton*, 84 Cal. App. 4th 64, 72 (Cal. Ct. App. 2000) (collecting cases). When an agent enters an arbitration agreement on behalf of its principal, they obligate the nonsignatory principal to arbitrate disputes. *See, e.g., Madden v. Kaiser Found. Hospitals*, 17 Cal. 3d 699, 705-06 (Cal. 1976) (binding principals to arbitration agreement entered by agent authorized to act on their behalf). "The existence of an agency" for the purposes of binding nonsignatories to arbitration agreements hinges on "whether an agency relationship existed and whether an agent acted within the scope of his or her authority." *Larson v. Speetjens*, No. C05-3176 SBA, 2006 WL 2567873, at *7 (N.D. Cal. Sept. 5, 2006) (applying California law).

Under these authorities, E & E is bound to the arbitration provision in the Terms of Use if (i) an agency relationship existed between the signatory, Mr. Wang, and E & E; and (ii) Mr. Wang was acting within the scope of his agency authority when he entered the agreement. These requirements are satisfied here by (i) the employment relationship between Mr. Wang and E & E, and (ii) the express directives by E & E authorizing Mr. Wang to engage in the transaction. Thus, the Terms of Use bind E & E, including the arbitration provision.

## II. As an employee of E & E, Mr. Wang typifies the agency relationship

To determine whether an agency relationship exists—including in the context of a motion to compel arbitration—the key inquiry is whether the alleged agent acted on behalf of the principal while being subject to that principal's control. *See Murphy*, 724 F.3d at 1232. According to the Restatement (Third) Of Agency, agency "is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall

act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." Section 1.01 (2006).

Mr. Wang's position as an employee of E & E represents the typical agency-principal relationship recognized under California law. Indeed, the "common law of agency," which courts follow in this context, "encompasses the employment relation." *Huong Que, Inc. v. Luu*, 150 Cal. App. 4th 400, 414 (Cal. Ct. App. 2007) (quoting Restatement (Third) of Agency §1.01 (2006) (Comment c)). It is even codified in this state that an "agency is actual when the agent is really employed by the principal." Cal. Civ. Code § 2299.

Unsurprisingly, California courts expressly recognize the "employer and employee" relationship is an example of the common law "exceptions to the general rule that one must be a party to an arbitration agreement to . . . be bound by it." *DMS Servs., Inc. v. Superior Court*, 205 Cal. App. 4th 1346, 1353 (Cal. Ct. App. 2012); *see also Xinhua Holdings Ltd.*, 2013 WL 6844270, at *8 (applying California law and finding that an allegation of agent and employee relationship to principal sufficient to permit nonsignatory employees to compel arbitration).

In the present case, E & E admits that Mr. Wang, the nominal signatory to the LITB Terms of Use, was "employed by Plaintiff, E & E Co. Ltd." when the agreement was formed. E & E Response at 2:3. There is therefore no question that he was generally under the control of E & E at the time. Further, the purchases in question were directed by E & E's Vice President, indicating that Mr. Wang was indeed under the control of his employer at the specific point the agreement was formed. *Id.* at 2:11-13. With respect to identity of interest, Mr. Wang generally acted on behalf of E & E in his everyday capacity (a "Graphics Designer," *id.* at 2:3), as well as with respect to the formation of the agreement in question, which E & E admits was directed for a business purpose. *Id.* at 2:11-13. Therefore, both the "essential element" that the principal "control the behavior of the alleged agent," *DeSuza v. Andersack*, 63 Cal.App.3d 694, 699 (Cal. Ct. App. 1976), and the requirement that Mr. Wang act on E & E's behalf are satisfied. The existence of an agency relationship between the signatory, Mr. Wang, and the nonsignatory E & E is clear.

**III. By making the relevant purchases on behalf of and under the express authorization of E & E, Mr. Wang was acting within the scope of his agency relationship**

Once it is determined that an agency relationship exists, the inquiry turns to whether or not Mr. Wang acted within the scope of that relationship. Agreements to arbitrate, when executed within the scope of the agent's authority, bind the principal. *Madden*, 17 Cal. 3d at 705-06. This District, applying California law, has determined that "[a]n agent represents his principal for all purposes within the scope of his authority, and 'all of the rights and liabilities which would accrue to the agent from transactions within such limit . . . accrue to the principal.' A contract made by an agent for an undisclosed principal is for most purposes the contract of the principal." *Garcia v. Stonehenge, Ltd.*, No. C-97-4368-VRW, 1998 WL 118177, at *3 (N.D. Cal. Mar. 2, 1998) (quoting Cal. Civ. Code § 2330).

Mr. Wang's purchases on LITB's website were expressly authorized by the Vice President of E & E. E & E Response at 2:11-13. Moreover, E & E's counsel confirmed during oral argument that "Plaintiff elected" to make these purchases—i.e., these were not the acts of an employee operating outside of his scope of authority, but a decision made and endorsed by "Plaintiff." Hearing Tr. at 7:4-5. By directing Mr. Wang to engage in that transaction, E & E must therefore be bound to all of the obligations accruing from that transaction. E & E cannot in one breath state its express prior assent and intended reliance on the purchases, and in the next breath claim that its employee acted beyond the scope of his authority in carrying out those orders.

Moreover, E & E's "failure to promptly disaffirm [its] agent's conduct on [its] behalf constitutes a ratification" that Mr. Wang was indeed acting in its interest and with its authorization. *NORCAL Mut. Ins. Co. v. Newton*, 84 Cal. App. 4th 64, 79 (Cal. Ct. App. 2000). Under general contract principles, a "principal is liable [e.g., bound to arbitrate] 'when the principal knows the agent holds himself or herself out as clothed with certain authority and remains silent.'" *Id.* at 78.

Although E & E has attacked the Terms of Use on several grounds, at no point has E & E asserted that Mr. Wang acted without authorization or outside of an agency relationship. Even as originally phrased in the FAC, the alleged actions of an unnamed "E & E investigator"

still indicates that the actions taken were under the control of and on behalf of E & E. D.I. 35, at ¶ 19. And, again, E & E has not disavowed the actions of Mr. Wang or any of its employees in obtaining the allegedly infringing materials, nor in taking the necessary steps to do so (including agreeing to the LITB Terms of Use). Rather, E & E has repeatedly indicated that the transaction was authorized—that the decision to make the purchases was that of "***Plaintiff***," for the purpose of "protect[ing] ***Plaintiff's*** intellectual property rights," and "to support ***Plaintiff's*** investigation of infringement." Hearing Tr. at 7:4-5, 8:4-6; E & E Response at 2:11-13 (emphases added).

Once it has been determined that a valid contract has been formed and that the agent was vested with the authority to engage in the related transaction, a nonsignatory principal is bound to the provisions therein. E & E does not and cannot deny that its employee, Mr. Wang, affirmatively checked the box assenting to the Terms of Use on the LITB website, forming a valid contract. E & E further admits that Mr. Wang was directed, and thereby granted actual authority to enter the transaction. Mr. Wang was held out to have the authority to enter the transaction and agree to the Terms of Use when he then made the purchases on behalf of his principal and affirmatively checked the box. It would be improper as part of this threshold issue to inquire further into the scope of the arbitration provision included within the agreement. A valid contract exists, and E & E is bound through its signatory agent. Interpretation of the scope of the arbitration provision, and whether or not it delegates arbitrability, must be conducted in accordance with the separate principles already briefed at length before this Court. *See* D.I. 34, 42.

## IV. No further special or additional requirements are necessary to bind E & E

E & E may attempt to argue that some additional showing is required to bind a nonsignatory through agency principles. Such arguments are misguided. To avoid any confusion, LITB recognizes that some cases have required that a claim must "relate to or arise out of the contract containing the arbitration clause" for a nonsignatory to be able to compel arbitration based on agency principles. *See, e.g.*, *Britton v. Co-op Banking Group*, 4 F.3d 742, 747 (9th Cir. 1993). As an initial matter, this additional "relate[s] to" requirement is a creature of federal common law; no such requirement exists in California law. And after the United States Supreme

Court's 2009 decision in *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009), it is clear that state law, not federal common law, controls. *See Murphy*, 724 F.3d at 1232 n.8.

Moreover, the foundation for the rationale in cases like *Britton* (or others that may be offered by E & E) is limiting language found in the arbitration provision that limits coverage only to claims "arising out of or relating to this Agreement or the breach thereof." *Britton*, 4 F.3d at 745. As LITB discussed in its Reply Brief, this limiting language requires a narrower scope in interpreting arbitration provisions that contain such limitations. However, the arbitration provision in LITB's Terms of Use contains no such limitations. *See* D.I. 42, at 11-12. In any case, courts in this District have confirmed that "[w]hether the claim arises out of the [ ] agreement . . . is a separate issue from standing" to enforce an arbitration clause. *Garcia,* 1998 WL 118177, at *5.

Finally, even if the Court were to apply the narrower federal requirement that the claims "relate to" the agreement, it would not change the result because the dispute does in fact relate to the agreement. Because the Terms of Use agreement contemplates precisely the kind of Intellectual Property dispute asserted here, the arbitration provision applies. Moreover, "where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).

**CONCLUSION**

For the foregoing reasons, LITB respectfully requests that the Court find that this threshold issue is satisfied, and that E & E is obligated to honor the agreement formed by its employee and with its express authorization.

Dated: October 1, 2015

SIMPSON THACHER & BARTLETT LLP

By /s/ Harrison J. Frahn IV

Harrison J. Frahn IV
hfrahn@stblaw.com
2475 Hanover Street
Palo Alto, California 94304
Telephone: (650) 251-5000
Facsimile: (650) 251-5002

*Attorneys for Defendant*
*Light In The Box Limited*