UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| E & E CO., LTD.,<br><br>        Plaintiff,<br><br>        v.<br><br>LIGHT IN THE BOX LIMITED,<br><br>        Defendant. | Case No.  15-cv-00069-EMC<br><br>**ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION**<br><br>Docket No. 34 |

Plaintiff E&E Co., Ltd. ("E&E") has filed suit against Defendant Light In The Box Limited ("Light"), asserting claims for, inter alia, copyright infringement and violation of the Lanham Trademark Act. Currently pending before the Court is Light's motion to compel arbitration. Having considered the parties' briefs and accompanying submissions, including the supplemental briefing ordered by the Court,[1] the Court hereby **DENIES** Light's motion to compel.

## I.      FACTUAL & PROCEDURAL BACKGROUND

A.      First Amended Complaint

E&E alleges in its first amended complaint ("FAC") as follows.

E&E is a corporation that is a source of "various products and brands in the home furnishings marketplace." FAC ¶ 9. It has registered various trademarks with the United States Patent & Trademark Office, which it uses in connection with its home furnishing goods. *See* FAC ¶ 10. In addition, E&E has copyrighted certain designs which it uses in connection with home furnishing products. *See* FAC ¶¶ 11-12.

---

[1] Light objected to E&E's initial supplemental briefing on the ground that the briefing exceeded the page limits permitted by the Court. E&E subsequently filed an abbreviated version of its supplemental brief.

1  Light is a company that operates a commercial website. On its website, Light offers for
2  sale products that infringe on E&E's trademarks and copyrights. *See* FAC ¶ 1. Light has done so
3  since at least May 2014. *See* FAC ¶ 18.

"An E&E investigator visited [Light's] Website and purchased some Infringing Products which were shipped from China to the State of California." FAC ¶ 19. "The Infringing Products obtained from [the] Website were identified as 'Quilt Set, 3 Pieces Palace Style Polyester Queen Size' and 'Quilt Set, 3 Pieces Ocean Style Polyester Queen Size.'" FAC ¶ 19. The purchased products were exact duplicates of works copyrighted by E&E. *See* FAC ¶ 19. In addition, the purchased products were "falsely and misleadingly labeled." FAC ¶ 19.

Based on, *inter alia*, the above allegations, E&E has asserted the following claims for relief:

(1) Copyright infringement, *see* 17 U.S.C. § 101 *et seq.*;

(2) False designation of origin and advertising, *see* 15 U.S.C. § 1125(a); and

(3) California unfair competition. *See* Cal. Bus. & Prof. Code § 17200.

B.  Arbitration Agreement

Light has moved to compel arbitration. Its motion is predicated solely on the act of E&E's investigator purchasing a product from the Light website. Absent that purchase, Light has no basis to compel arbitration of E&E's statutory claims which arise out of Light's putative infringement.

According to Light, "[t]o purchase products from [its website,] a customer must create an online account with [the website]." Shen Decl. ¶ 4; *see also* Shen Decl. ¶ 8 (stating that "[a] customer cannot successfully order products from [the website] without creating an online account through the website"). "To create an account . . . , a customer must provide an email address, create a password, set a default shipping destination, and click a box confirming, 'I agree to Lightinthebox.com Terms and Conditions.' The phrase 'Terms and Conditions' in the agreement box contains a hyperlink that, when clicked, sends customers to a page displaying the full Terms

2

of Use for Lightinthebox.com."[2]  Shen Decl. ¶ 6; *see also* Shen Decl., Ex. A (website page, showing that, with registration of a new account, "I agree to LightintheBox.com <u>Terms and Conditions</u>").

"Once a customer enters the required information on the account creation page . . . , [Light] sends the customer an e-mail asking the customer to confirm his or her e-mail address."  Shen Decl. ¶ 9.  When the e-mail address is confirmed, the customer is taken to a webpage that states: "Thanks for confirming your LightInTheBox account."  Shen Decl., Ex. D (website).  At the bottom of the webpage, there are various links to company information, customer service, payment and shipping, company policies, and other business.  Underneath "Company Policies," there are links to, *inter alia*, the Terms of Use.

The Terms of Use begin with the following introduction:

> Welcome to the website of Light In The Box Limited. LightInTheBox.com provides its services to you subject to the notices, terms, and conditions set forth in this agreement (the "Agreement").  In addition, when you use any LightInTheBoxcom service (e.g., Customer Reviews), you will be subject to the rules, guidelines, policies, terms, and conditions applicable to such services, and they are incorporated into this Agreement by reference. LightInTheBox.com reserves the right to change this side and these terms and conditions at any time.
>
> **Accessing, browsing, or otherwise using the site indicates your agreement to all the terms and conditions in this agreement. Please read this agreement carefully before proceeding.**

Shen Decl., Ex. B (Terms of Use) (emphasis in original).

The introduction is followed by several sections, including one titled "Intellectual Property Infringement Policy."  The text of that section is provided below:

**Intellectual Property Infringement Policy**

---

[2] In its opposition, E&E points out that the arbitration agreement is actually contained in the "Terms of Use" and there does not appear to be any such document that exists called "Terms and Conditions."  *See* Opp'n at 6.  This is a minor discrepancy to which the Court does not assign any importance – particularly, as indicated below, the Terms of Use are self-described as terms and conditions.

3

> It is the policy of LightInTheBox.com to take appropriate action where necessary to uphold and recognize all relevant State, Federal and International laws in connection with material that is claimed to be infringing any trademark, copyright, patent and all or any other Intellectual Property laws.  If you are an intellectual property rights owner and you believe that LightInTheBox.com sells, offers for sale, or makes available goods and/or services that infringe your intellectual property rights, then send the following information in its entirety to ipip@lightinthebox.com
>
> Information required
>
> 1. An electronic or physical signature of the person authorized to act on behalf of the owner of an exclusive that is allegedly infringed;
> 2. A description of the allegedly infringing work or material;
> 3. A description of where the allegedly infringing material is located on the site (product(s) URL);
> 4. Information reasonably sufficient to allow us to contact you, such as your address, telephone number and e-mail address;
> 5. A statement by you that you have a good faith belief that the disputed use of the material is not authorized by the copyright or other proprietary right owner, its agent, or the law;
> 6. Identification of the intellectual property rights that you claim are infringed by the Website (e.g. "XYZ copyright", "ABC trademark, Reg. No. 123456, registered 1/1/04",etc); and
> 7. A statement by you that the above information and notification is accurate, and under penalty of perjury, that you are the copyright owner or authorized to act on behalf of the owner whose exclusive right is allegedly infringed.

Several sections later in Light's "Terms of Use," following provisions related to, *inter alia*, termination, limitation of liability, order acceptance, transfer of title, and pricing, the following section on arbitration appears:

> **Arbitration**
>
> Where the parties fail to settle dispute within 30 days after such dispute occurs, they agree to submit such dispute to Hong Kong International Arbitration Center (the "HKIAC") for arbitration which shall be conducted in accordance with the Commission's arbitration rules in effect at the time of applying for arbitration.  The arbitral awards are final and binding upon both parties.

Shen Decl., Ex. B (Terms of Use) (bold in original).

The Court acknowledges that E&E has objected to the exhibits attached to the Shen

4

declaration, which contain evidence of the Terms of Use, including the arbitration agreement. *See* Opp'n at 4. E&E argues that the exhibits have not been properly authenticated by Ms. Shen because her declaration was executed on August 14, 2015, but the website pages were not printed out until August 18 and 19, 2015 (i.e., five days later). E&E argues: "It is possible for the Declaration to authenticate documents which did not exist at the time it was executed. This raises serious doubt as to whether the Exhibits or even the final Declaration were ever seen or reviewed by [Ms.] Shen." Opp'n at 5.

But Light has satisfactorily addressed this issue in its reply brief and Chacon declaration. In the declaration, Caitlyn Chacon, an associate at Simpson Thacher, explains that she gave copies dated August 12, 2015, for Ms. Shen to review, *see* Chacon Decl., Exs. A-D (documents bearing the date August 12, 2015), but that she printed out new documents for the Court's review because the image quality of the copies sent to Ms. Shen was not as sharp as she would have liked. *See* Chacon Decl. ¶¶ 2-4.

To the extent E&E also argues that the exhibits should be given no weight because there is no evidence indicating when the procedures above were put in place by Light and whether they were operative at the time the investigator made the purchase from the website, *see* Opp'n at 5, that has also been addressed by Light in its reply brief through a supplemental declaration from Ms. Shen. *See* Shen Supp. Decl. ¶ 3 ("The www.lightinthebox.com account creation processes and procedures described in Declaration of Liu Shen In Support of Defendant Light In the Box Limited 's Motion to Compel Arbitration , Dkt. No . 34-1, have been in effect for four years, including throughout the period of May 2014 to the present.").

## II.   DISCUSSION

A.   Legal Standard

Light contends that the Federal Arbitration Act ("FAA") is applicable to the instant case, and E&E does not dispute this assertion. See Opp'n at 2 (making reference to the FAA); *see also* 9 U.S.C. § 2 ("A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the

5

refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.").

Under the FAA,

> [a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. . . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.

*Id.* § 4.

B.  Nonsignatory to Arbitration Agreement

In evaluating whether arbitration should be compelled in the instant case, the Court must begin with the predicate issue of whether E&E ever entered into an arbitration agreement with Light in the first place. E&E itself never signed an agreement with Light; at best, its investigator did.

To the extent Light has suggested that this issue is for an arbitrator to decide, and not the Court, the Court does not agree. Gateway issues of arbitrability – "such as whether the parties have a valid arbitration agreement or are bound by a given arbitration clause, and whether an arbitration clause in a concededly binding contract applies to a given controversy" – are typically issues for a court to decide, and not an arbitrator. *Momot v. Mastro*, 652 F.3d 982, 987 (9th Cir. 2011). "[G]ateway issues can be expressly delegated to the arbitrator [only] where 'the parties clearly and unmistakably'" so agree. *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (emphasis omitted); *see also Momot*, 652 F.3d at 988.

Here, Light argues that there is a clear and unmistakable delegation because the arbitration

6

provision in the Terms of Use provides as follows:

> Where the parties fail to settle dispute within 30 days after such dispute occurs, they agree to submit such dispute to Hong Kong International Arbitration Center (the "HKIAC") for arbitration which shall be conducted in accordance with the Commission's arbitration rules in effect at the time of applying for arbitration. The arbitral awards are final and binding upon both parties.

Shen Decl., Ex. B (Terms of Use) (emphasis added). Light points out that the arbitration rules for the HKIAC provide that "[t]he arbitral tribunal may rule on its own jurisdiction under these Rules, including any objections with respect to the existence, validity or scope of the arbitration agreement(s)." HKIAC Administered Arbitration Rules, art. 19.1.

As discussed below, E&E argues that there was no clear and unmistakable delegation, and the Court ultimately agrees. However, even assuming there were such a delegation here, the delegation gives the arbitrator the authority to decide only "the existence, validity or scope of the arbitration agreement(s)." HKIAC Administered Arbitration Rules, art. 19.1. There is no delegation to the arbitrator with respect to the issue of who is a party to the arbitration agreement in the first place. Thus, this specific gateway issue remains for the Court to decide. *See, e.g.*, *Eichleay Corp. v. Int'l Ass'n of Bridge*, 944 F.2d 1047, 1059 n.12 (3d Cir. 1991) (taking note of precedent in which "we considered whether the district court had correctly delegated to an arbitrator the determination whether the nonsignatory parent corporation of a double-breasted contractor was bound by the national labor agreement entered into by its nonunionized subsidiary[;] we held that a nonsignatory cannot be bound to a collective bargaining agreement under an alter ego theory unless the district court has, as a condition precedent, made the alter ego determination"); *Soto v. Am. Honda Motor Co.*, 946 F. Supp. 2d 949, 954 (N.D. Cal. 2012) (Illston, J.) (stating that "the threshold issue of whether the delegation clause is even applicable to a certain party must be decided by the Court"; explaining that "[t]he provisions granting authority to the arbitrator to decide issues of scope are by definition are only applicable to the parties of the agreement" and "[t]hus, the Court must first decide which parties are bound by delegation clause,

7

before the arbitrator can decide the interpretation and scope of the arbitration clause."); *see also Bd. of Trs. of the City of Delray Beach Police & Firefighters Ret. Sys. v. Citigroup Global Mkts., Inc.*, 622 F.3d 1335, 1342 (11th Cir. 2010) (stating that "[t]he determination whether a signatory like Adams had the authority to bind a non-signatory like the Board to arbitrate 'turns on the specific facts of each case'[;] [t]his issue is for us, not an arbitrator, to resolve, unless the parties have clearly delegated to the arbitrator responsibility for this determination").

As to the merits, at the hearing on the motion to compel, the Court asked the parties to provide supplemental briefing as to whether E&E – as a nonsignatory to the arbitration agreement – could be compelled to arbitrate given that, as indicated in the complaint, its investigator appeared to be the signatory. *See* FAC ¶ 19 ("An E&E investigator visited [Light's] Website and purchased some Infringing Products which were shipped from China to the State of California."). To assist in the resolution of this issue, E&E provided (in compliance with an order from the Court) what is in effect an interrogatory response describing in further detail the circumstances under which its investigator purchased the allegedly infringing products from the Light website:

> On or around May 12, 2014, Zeming Wang placed an order (Order No. 1405121707485513) on lightinthebox.com which included one "Quilt Set, 3 Pieces Ocean Style Polyester Queen Size" and one "Quilt Set, 3 Pieces Palace Style Polyester Queen Size" (collectively referred to as the "Goods"). Mr. Wang used his personal email account to set up an account with lightinthebox.com. Mr. Wang is a Graphics Designer employed by Plaintiff, E&E Co. Ltd. Mr. Wang used his own personal credit card to make the purchase of the Goods. E&E reimbursed Mr. Wang for the purchase of the Goods. The Goods were shipped and delivered to Mr. Wang's personal residence located in Fremont, California. The Goods were retained by E&E.
>
> Prior to Mr. Wang's purchase of the Goods, Coco Qiu, Graphics Director with SYNC Design, Inc., an affiliate of Plaintiff, discovered photographs on lightinthebox.com that appeared to be copies of product photographs (both photographs and photograph content, i.e., designs). Ms. Qui informed E&E's Vice President, Susan Wang, of her discovery and Ms. Wang requested that Mr. Wang order the Goods to secure evidence of Defendant's wrongdoing and protect Plaintiff's intellectual property rights.

8

Docket No. 52-1 (response).

As both parties recognize in their supplemental briefs, if an agent of a principal is a signatory to an arbitration agreement, and not the principal, the nonsignatory principal can still be compelled to arbitration so long as the agent had actual or ostensible authority to make such an agreement. *See, e.g.*, *Westra v. Marcus & Millichap Real Estate Investment Brokerage Co., Inc.*, 129 Cal. App. 4th 759, 765 (2005) (providing that "[a] nonsignatory to an agreement may be required to arbitrate . . . if a preexisting confidential relationship, such as an agency relationship between the nonsignatory and one of the parties to the arbitration agreement, makes it equitable to impose the duty to arbitrate upon the nonsignatory"); *see also Sealed Appellant 1 v. Sealed Appellee 1*, No. 14-20204, 2015 U.S. App. LEXIS 14585, at *10-11 & n.15 (5th Cir. Aug. 17, 2015) (noting that agency can be "a basis for binding principal nonsignatories to an arbitration agreement" and that, "[u]nder Texas agency law, '[a]n agent's authority to act on behalf of a principal depends on some communication by the principal either to the agent (actual or express authority) or to the third party (apparent or implied authority)'"); *OSU Pathology Servs., LLC v. Aetna Health, Inc.*, No. 2:11-cv-005, 2011 U.S. Dist. LEXIS 47895, at *36-37 (S.D. Ohio May 4, 2011) (stating that "a nonsignatory principal can be compelled to arbitrate under an agency theory if a party to the contract signed the contract containing the arbitration agreement as the nonsignatory's agent[;] [u]nder ordinary agency principles, a principal is bound by contracts executed by an agent with actual or apparent authority").

Here, Light makes no contention that Mr. Wang had the ostensible authority to agree to arbitration. This is not surprising given that there was nothing to suggest to Light that Mr. Wang had any relationship with E&E in the first place. *See Makaron v. GE Sec. Mfg.*, No. CV-14-1274-GW(AGRx), 2015 U.S. Dist. LEXIS 75240, at *20-21 (C.D. Cal. May 18, 2015) (noting that "'[a]pparent authority is the power held by an agent or other actor to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations'"). Therefore, the question for the Court is whether Mr. Wang had the actual authority to agree to arbitration.

9

1     Light essentially takes the position that, because E&E undisputedly gave Mr. Wang the
2 authority to make the purchases from the Light website, he automatically had the authority to
3 agree to any "obligation[] accruing from that transaction." Docket No. 53 (Supp. Br. at 5). That
4 argument is not persuasive. Here, the statutory obligations asserted in this lawsuit do not "accrue"
5 from the transaction. Even though E&E gave Mr. Wang the authority to purchase the two quilts,
6 there is nothing to show that E&E contemplated giving Mr. Wang the authority to agree to
7 arbitrate broad statutory claims that would exist independent of the purchases. While such
8 authority might exist where, *e.g.*, an owner, corporate officer, or high-level executive of a
9 company enters into an agreement containing a broad arbitration clause, it is not reasonable to
10 draw such an inference here where a low-level employee made a singular purchase of two quilts.
11 In the circumstances here, no reasonable employer would expect that giving a low-level employee
12 the authority to make a purchase would implicitly carry the authority to arbitrate broad statutory
13 claims divorced from and independent from that singular purchase.
14     Accordingly, the Court concludes that Mr. Wang did not have the actual authority to agree
15 to arbitrate E&E's claims asserted in this lawsuit (as opposed to any dispute about the
16 merchandise actually purchased by Mr. Wang). As a result, E&E cannot be compelled to
17 arbitrate. Light's motion to compel arbitration is therefore denied. However, because there are
18 additional independent grounds for denying Light's motion, the Court briefly addresses those
19 grounds below.
20 C.     <u>Delegation</u>
21     Assuming, for purposes of the analysis herein, that Mr. Wang had the actual authority to
22 agree to arbitration, the next question for the Court would be whether the claims asserted by E&E
23 are covered by the arbitration agreement. As indicated above, Light contends that this issue is a
24 gateway issue of arbitrability that has been delegated to the arbitrator to decide, not the Court.
25 The arbitration provision in the Terms of Use provides as follows:

> Where the parties fail to settle dispute within 30 days after such
> dispute occurs, they agree to submit such dispute to Hong Kong

10

>International Arbitration Center (the "HKIAC") for arbitration which shall be conducted in accordance with the Commission's arbitration rules in effect at the time of applying for arbitration. The arbitral awards are final and binding upon both parties.

Shen Decl., Ex. B (Terms of Use) (emphasis added). According to Light, the arbitration rules for the HKIAC provide that "[t]he arbitral tribunal may rule on its own jurisdiction under these Rules, including any objections with respect to the existence, validity or scope of the arbitration agreement(s)." HKIAC Administered Arbitration Rules, art. 19.1. Light contends the arbitrator, not the Court, should decide the question of scope.

The problem for Light is that a delegation provision must be clear and unmistakable in order to divest the Court of jurisdiction to decide the matter. As E&E argues, even if there were an agreement to submit a dispute to the HKIAC, it is not clear whose rules – the HKIAC's or another body's – would apply. The HKIAC does not appear to have any body or affiliated entity known as a "Commission." See Opp'n at 8; *see also* http://www.hkiac.org/en/hkiac/organisation-structure (organization chart, last visited October 7, 2015). Light has not pointed to any evidence showing that the HKIAC does in fact have a "Commission."

In fact, in response, Light essentially concedes the error (using the term "Commission" instead of, e.g., "Center") but argues that the error should not detract from there being a clear and unmistakable delegation to the HKIAC.

>"Language in an agreement must be construed in the context of that instrument as a whole . . . and cannot be found to be ambiguous in the abstract." *In re Tobacco Cases I, JCCP 4041*, 124 Cal. App. 4th 1095, 1106 (Cal. App. 2004) (internal quotation marks omitted). Plaintiff, however, interprets the word "Commission" by ignoring all context provided by the rest of the arbitration provision and the Terms of Use. Reading "Commission" in context shows without doubt that it refers to the HKIAC. The arbitration provision designates the HKIAC as the venue for arbitration and incorporates the "Commission's arbitration rules" in adjacent clauses of the same sentence. *See* Shen Decl., Ex. B at 3. Moreover, the HKIAC is the only arbitral body referenced in the Terms of Use – no other commission or center appears anywhere else in the agreement. *See id.* Plaintiff's argument that the "Commission" refers to some

11

> unidentified commission when the HKIAC is referenced in the same sentence "adopt[s] a strained or absurd interpretation in order to create an ambiguity where none exists." *In re Tobacco Cases*, 124 Cal. App. at 1106-07 (internal quotation marks omitted).
>
> Moreover, Plaintiff's argument ignores precedent upholding similar provisions in arbitration clauses between business entities or sophisticated parties, such as LITB and E&E. *Brennan*, which Plaintiff alleges is in "complete contrast" to this case, Opp. at 8, involved an arbitration agreement that stated claims "shall be settled by binding arbitration in accordance with the Rules of the American Arbitration Association" (the "AAA"). 2015 WL 4731378, at *2. Although there is no specific set of rules titled the "Rules of the American Arbitration Association," the court found that the clause "incorporated the AAA arbitration rules, one of which" delegated arbitrability to the arbitrator. *Id.* at *2, *4 . . . .

Reply at 8.

While Light's argument is not without any merit, the Court is not persuaded. *In re Tobacco Cases* did not deal with the specific issue of whether there was a clear and unmistakable delegation to an arbitrator. In addition, *Brennan* is distinguishable because there the arbitral body (whose rules would be applied) was clearly identified. While it may well have been an error on the part of Light in using the term "Commission," that error renders the attempted delegation insufficiently clear and unambiguous (compared to *Brennan*). There was no clear and unmistakable delegation.

D.  Scope of the Arbitration Agreement

Because there was no clear and unmistakable delegation, the Court (and not an arbitrator) must decide whether the arbitration agreement covers the claims asserted in this lawsuit (*i.e.*, copyright infringement, false designation or origin and false advertising in violation of the Lanham Act, etc.).

E&E's main argument that the arbitration agreement does not cover the claims at issue is based on the fact that the arbitration provision refers simply to "dispute":

> Where the parties fail to settle dispute within 30 days after such dispute occurs, they agree to submit such dispute to Hong Kong

12

> International Arbitration Center (the "HKIAC") for arbitration which shall be conducted in accordance with the Commission's arbitration rules in effect at the time of applying for arbitration. The arbitral awards are final and binding upon both parties.

Shen Decl., Ex. B (Terms of Use) (emphasis added). E&E argues that it is important that the arbitration provision did not say "all disputes" or "any dispute" or even "a dispute." See Opp'n at 10. According to E&E, the use of the word "dispute" indicates that "the Asserted Arbitration Clause applies only to disputes arising from the Purported Agreement itself" – or at the very least there is an ambiguity and that ambiguity should be construed against Light (as drafter of the contract) "in accordance with standard rules of contract interpretation." Opp'n at 10.

The Court agrees with E&E that the choice of wording here has significance. Notably, the arbitration clause does not refer, *e.g.*, to "*any* dispute *relating to*" the contract, the kind of broad language that has been given expansive construction. Nor does it say "*any* dispute *arising out of*" the sale, language which has been more narrowly construed by the Ninth Circuit at least – and even in the face of the normal presumption favoring arbitration. *See Cape Flattery Ltd. v. Titan Mar., LLC*, 647 F.3d 914, 922-23 (9th Cir. 2011) (explaining that phrases such as "arising hereunder," "arising under," and "arising out of" are intended to cover a narrower scope of disputes, *e.g.*, those related to the interpretation and performance of the contract, whereas, when parties intend to include a broad arbitration provision, they use the phrase "arising out of or relating to" ); *cf. EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) (stating that, "[w]hile ambiguities in the language of [an] agreement should be resolved in favor of arbitration, [courts] do not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated").

Here, the clause only says "[w]here the parties fail to settle dispute" as the trigger for arbitration. A natural construction of "dispute" as used therein is one that arises out of the contract between the parties. Indeed, even Light concedes that a claim is subject to arbitration where it touches matters covered by the contract containing the arbitration provision. *See* Mot. at 10 (citing *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 720-21 (9th Cir. 1999) (in case where arbitration

13

clause covered "'[a]ll disputes arising in connection with this Agreement,'" stating that, "[t]o require arbitration, [plaintiff's] factual allegations need only 'touch matters' covered by the contract containing the arbitration clause and all doubts are to be resolved in favor of arbitrability")); *cf. McBride v. St. Anthony Messenger Magazine*, No. 2:02-cv-0237-JDT-WTL, 2003 U.S. Dist. LEXIS 6449, at *34 (S.D. Ind. Feb. 6, 2003) (noting that the arbitration provision "reaches 'any dispute' between the parties"; adding that, "[t]hough it may be unreasonable to understand the parties as intending that any dispute that may arise between them even if unrelated to the Agreement would be subject to arbitration, that is not the case here").

According to Light, the claims asserted by E&E touch matters covered by the Terms of Use because the Terms of Use specifically address intellectual property infringement – including the "Intellectual Property Infringement Policy" quoted above. But the procedures described in that Policy were never invoked by E&E (or Mr. Wang). Again, this suit is based on alleged conduct entirely outside the contract to sell the two quilts to Mr. Wang.

Light also argues that E&E's claims touch matters covered by the Terms of Use because "E&E relies on [the] alleged purchase in its Complaint to support its copyright and trademark claims against [Light]." Mot. at 11. This argument is not any more persuasive. E&E's claims of, *inter alia*, copyright infringement and false designation are not based on Mr. Wang's making that purchase on E&E's behalf – especially as the purchase was not a bona fide purchase but rather one made for purposes of litigation (*i.e.*, in order to confirm that the products were infringing). Rather, the claims are based on Light's offering for sale and selling allegedly infringing products to *third parties*. While the arbitration clause might apply to a dispute arising out of or in connection with the particular goods purchased by Mr. Wang, it does not apply to E&E's claims related to Light's advertising and sale to third parties.

Moreover, it is worth noting that, if no goods were ever purchased from the Light website, and E&E simply brought suit against Light without such a purchase, it is clear that the statutory claims asserted by E&E would not be arbitrable under the Terms of Use. There would be no contract between the parties at all. Just because E&E wanted to confirm that the goods on the

14

Light website were infringing, and therefore made a purchase – in compliance with its obligations under Federal Rule of Civil Procedure 11, no less – Light takes the position that the nonarbitrable statutory claims which do not arise from the contract are thereby converted into arbitrable ones. To give effect to Light's position would make little sense and would be contrary to sound public policy – *i.e.*, why should E&E be deprived of a judicial forum that it would ordinarily be entitled to just because it takes steps to ensure that it is meeting its judicially required obligations?

The Court therefore concludes that, Mr. Wang did not have the authority to agree to arbitrate the claims herein on behalf of E&E but that, even if he did, the scope of the arbitration provision does not cover the claims asserted by E&E.

### III.  CONCLUSION

Accordingly, the Court hereby **DENIES** Light's motion to compel arbitration.

This order disposes of Docket No. 34.

**IT IS SO ORDERED**.

Dated: October 9, 2015

_____
EDWARD M. CHEN
United States District Judge